IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MATTHEW KARGOL,<br><br>    Plaintiff,<br><br>vs.<br><br>OSKALOOSA COMMUNITY SCHOOL DISTRICT and MICHAEL FISHER, *in his individual capacity*,<br><br>    Defendants. | Case No. 4:25-cv-00351<br><br><br><br><br>**COMPLAINT**<br>**AND**<br>**JURY DEMAND** |

COMES NOW the Plaintiff and states the following for his cause of action against the Defendants:

**INTRODUCTION**

1.   This is an action under 42 U.S.C. § 1983, challenging the Defendants' deprivation under color of law of Plaintiff's rights, privileges, and immunities under the First Amendment to the United States Constitution.

**PARTIES**

2.   Plaintiff Matthew Kargol is a resident of Mahaska County, Iowa.

3.   Defendant Oskaloosa Community School District is a public school district located in Mahaska County, Iowa, organized and existing under the laws of the State of Iowa. It is a political subdivision of the State of Iowa, a local governmental entity, and at all times material to this action acted under color of state law.

4.   Defendant Michael Fisher is the Superintendent of Defendant Oskaloosa Community School District and a resident of Mahaska County, Iowa. At all times material to this

1

action, he was acting under color of state law as the Oskaloosa Community School District's chief executive officer, and he is sued in his individual capacity.

## JURISDICTION AND VENUE

5.   This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because the claims present federal questions and seek to redress the deprivation of rights secured by the Constitution and laws of the United States of America.

6.   Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred within this district, and 28 U.S.C. § 1391(b)(1) because the Defendants reside in this district.

## BACKGROUND FACTS

7.   Plaintiff Matthew Kargol grew up in Oskaloosa and graduated from Oskaloosa High School in 1993.

8.   Mr. Kargol is an experienced Iowa educator who holds Bachelor of Arts and Master of Arts degrees from the University of Northern Iowa and a Master of Fine Arts degree from Clemson University.

9.   Mr. Kargol holds an Iowa Master Educator License with K-12 Art and K-12 Athletics Coach endorsements.

10.   Mr. Kargol returned to Oskaloosa and began teaching art at Oskaloosa High School in 2012.

11.   In addition to teaching art, Mr. Kargol also coached wrestling and track and field.

12.   Mr. Kargol was employed by Defendant Oskaloosa Community School District as a teacher under a continuing contract.

13. Mr. Kargol consistently received positive evaluations and has never been disciplined for conduct that would justify termination.

14. On September 10, 2025, while off duty and on his own personal Facebook account, Mr. Kargol posted a brief statement: "1 Nazi down."

15. Mr. Kargol's comment referred to the killing that day of conservative activist Charlie Kirk at a political event in Utah. The shooting dominated national headlines, was covered in every major news outlet, and was the subject of widespread political debate across the country.

16. Mr. Kargol's comment was rhetorical hyperbole about a widely reported public event. It did not threaten any person, did not incite imminent unlawful action, and was not directed at any member of the school community.

17. Mr. Kargol's Facebook profile did not identify him as an employee of the Oskaloosa Community School District. It contained no reference to the Oskaloosa Community School District, his position as a teacher, or his students. Nothing about the post connected his speech to his employment.

18. Mr. Kargol's post was not made in the classroom, during working hours, or using school resources.

19. Mr. Kargol's post was a blunt personal reaction to a high-profile political event: speech on a matter of public concern at the very core of the First Amendment's protections.

20. Within hours of the post, community members contacted the District with calls and emails, demanding punishment for the content of Mr. Kargol's speech.

21. Upon information and belief, the politically motivated pressure campaign did not allege any disruption in Mr. Kargol's classroom, any failure or inadequacy in his performance, or any threat to disrupt the learning environment.

22. Mr. Kargol's speech did not impair discipline by superiors, interfere with close working relationships requiring personal loyalty and confidence, create workplace disharmony, undermine the efficient provision of educational services, or affect Mr. Kargol's performance of his duties.

23. Upon information and belief, the complaints were about the viewpoint Mr. Kargol expressed—the content of his speech.

24. Defendant Fisher responded swiftly, not by examining whether the post had any impact on Mr. Kargol's ability to teach or the District's ability to provide educational services in an efficient and effective manner, but by condemning Mr. Kargol's viewpoint.

25. Defendant Fisher publicly announced that he would recommend termination and justified that recommendation by pointing to the public disapproval of Mr. Kargol's post and his own disagreement with Mr. Kargol's speech.

26. In media interviews, Defendant Fisher made clear that his condemnation was rooted in his personal beliefs, not in evidence of disruption. Speaking as "a man of faith," Defendant Fisher expressed disappointment in the state of society and disapproval of Mr. Kargol's expression.[1]

---

[1] https://www.kcbd.com/2025/09/12/school-art-teacher-placed-leave-facebook-post-about-charlie-kirks-death/

27. By invoking his personal religious identity in condemning Mr. Kargol's speech, Defendant Fisher confirmed that his reaction was based on his own values and ideology, not on legitimate pedagogical concerns.

28. The Defendants transformed a moment of public debate into an employment crisis for Mr. Kargol. Instead of respecting his right as a citizen to comment on political events of the utmost public interest, they chose to silence and punish him.

29. On September 17, 2025, the Board of Directors of the Oskaloosa Community School District adopted Defendant Fisher's recommendation and terminated Mr. Kargol's teaching contract.

30. The Defendants acted not because Mr. Kargol's post disrupted the learning environment, but because they disapproved of his protected speech.

31. By terminating Mr. Kargol's employment for the content of his speech, Defendants wielded state power to punish a citizen for expressing his opinion on political issues. Their actions strike at the heart of the First Amendment and chill the exercise of constitutional rights.

**COUNT I**
**FIRST AMENDMENT RETALIATION**
**IN VIOLATION OF 42 U.S.C. § 1983**

32. Plaintiff repleads paragraphs 1 through 31 as if fully set forth herein.

33. Plaintiff engaged in speech protected by the First Amendment to the United States Constitution on September 10, 2025, when he posted a comment on his personal Facebook account regarding a matter of public concern.

34. Plaintiff spoke as a private citizen and not pursuant to his duties as a teacher.

35. Plaintiff's speech did not reference the Oskaloosa Community School District, his students, or his employment, and it did not cause, or reasonably threaten to cause, any material disruption to the educational operations of the District.

36. Defendants terminated Plaintiff's employment because of the content and viewpoint of his protected speech.

37. Defendant Michael Fisher, acting under color of state law and in his capacity as Superintendent, recommended Plaintiff's termination based on his disagreement with Plaintiff's expression.

38. The Board of Directors of the Oskaloosa Community School District, acting under color of state law, adopted Defendant Fisher's recommendation and terminated Plaintiff's teaching contract.

39. Under Iowa law, the Board of Directors possesses final authority over teacher terminations. The Board's vote was an official act of the District and constituted final municipal policy. In the alternative, the Board ratified the Superintendent's recommendation with full knowledge of the basis for the action.

40. Plaintiff's protected speech was a substantial or motivating factor in Defendants' decision to terminate his employment, and Defendants cannot show they would have taken the same action absent the speech.

41. The Oskaloosa Community School District, as a local governmental entity, is liable under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because the decision of its Board of Directors to terminate Plaintiff constituted official policy and was the moving force behind the violation of Plaintiff's constitutional rights.

42. Defendants' actions would deter a person of ordinary firmness from exercising their First Amendment rights.

43. The balance of interests under *Pickering v. Board of Education*, 391 U.S. 563 (1968) favors Plaintiff's right as a citizen to comment on matters of public concern over the District's asserted interests.

44. At the time of the termination, it was clearly established that a public employer may not terminate an employee for speech made as a private citizen on a matter of public concern absent evidence that the speech meaningfully impaired discipline, workplace harmony, or operational efficiency. Defendant Fisher's conduct violated clearly established law.

45. Defendant Fisher acted maliciously or with reckless or callous indifference to Plaintiff's federally protected rights.

46. As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including but not limited to lost wages and employment benefits, damage to his professional reputation, and emotional distress.

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate him for his injuries and damages, for prejudgment and postjudgment interest, for appropriate declaratory, equitable, and injunctive relief including but not limited to reinstatement, for punitive damages against Defendant Michael Fisher in his individual capacity to deter him and other officials from engaging in similar conduct, for attorneys' fees, litigation expenses, and the costs of this action, and for such further relief as is just and appropriate under the circumstances.

## JURY DEMAND

COMES NOW the Plaintiff and demands a trial by jury.

Respectfully submitted,

*/s/ Nathan Borland*
**TIMMER, JUDKINS & BORLAND, P.L.L.C.**
Nathan Borland AT0011802
nate@tjb.law
Kara Eischen AT0014904
kara@tjb.law
1415 28th Street, Suite 375
West Des Moines, IA 50266
Telephone: (515) 259-7462
Fax: (515) 361-5390
**ATTORNEYS FOR PLAINTIFF**